# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| HEATHER M.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | No. 17 C 6287 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381a, 1382c, over five years ago. (Administrative Record (R.) 276-82). She claimed that she became disabled as of March 15, 2013 (R. 276), due to asthma, anxiety, bipolar disorder, educable mental handicap, and fibromyalgia. (R. 300). Over the ensuing five years, plaintiff's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. It is the ALJ's decision that is before the court for review. See 20 C.F.R. §§404.955; 404.981. Plaintiff filed suit under 42 U.S.C. § 405(g), and the parties consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636( c) on September 25, 2017. [Dkt. #6]. The case was reassigned to me on January 10, 2019. [Dkt. #26]. Plaintiff asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

**I.**

Plaintiff was born on July 6, 1978, and was just 36 when she applied for SSI, and only 35 when she claims she became unable to ever work again. (R. 276). She has a poor work record, with the last job she held onto for more than a few weeks being a telemarketer position from 1997 to 2001. (R. 310, 323). At an earlier hearing on her previous claim for benefits, she claimed she was fired from that job for arguing with her boss. (R. 319). At the hearing on her current claim, she said she was fired because she was being harassed by her husband's sisters at work. (R. 45). At both hearings, she testified the main reason she cannot work is because she does not get along with others. (R. 45, 122). But, at her most recent hearing, she also said it was because it bothers her to sit or stand for long periods and she doesn't do well around crowds of people. (R. 49).

The medical record covering plaintiff's treatment for a handful of impairments is, as is usually the case, large at about 1000 pages. (R. 419-1429). But, as is also usually the case, only a fraction of it is pertinent. In terms of medical evidence, plaintiff's brief indicates that only about 30 pages of the medical record matters. (R. 594, 773, 934, 940, 956, 960, 962, 967, 970, 985, 996, 998, 1037, 1041-42, 1172-73, 1177, 1199, 1201, 1251-52, 1256, 1258, 1284, 1300, 1388-90, 1393, 1413-14). [Dkt. #14, at 5-10]. Plaintiff also cites a few intelligence tests from plaintiff's childhood. (R. 958, 1160, 1162-65, 1170). [Dkt. #14, at 8-9]. As this only amounts to about 3 or 4 percent of the record, we will dispense with a tedious summary and discuss only those doctor visits and medical findings that the parties tell us matter to their arguments.

After an administrative hearing – at which plaintiff, represented by counsel, and a vocational expert testified – the ALJ determined plaintiff was not disabled. The ALJ found that plaintiff had a handful of severe impairments: "fibromyalgia, asthma, obesity, and bipolar, anxiety-related, and

2

personality disorder." (R. 16). The ALJ noted that plaintiff's blood pressure was normal to only slightly elevated; the lone report of peripheral neuropathy was countered by other evidence; and that the testing of plaintiff's intellectual capacity put her in the low normal range. As such, these were non-severe impairments. (R. 17). The ALJ summarized the medical evidence (R. 18-21) and found that plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment presumed to be disabling. (R. 18-19). The ALJ went on to determine that plaintiff's psychological impairments caused moderate limitations in all areas of functioning: daily activities; social functioning; concentration, persistence, and pace. (R. 19-21). But, because not one area was affected to a marked level, the ALJ found that plaintiff's psychological impairments, either singly or in combination, did not meet or equal a listed impairment assumed to be disabling in the Commissioner's listings. (R. 18, 21).

The ALJ then announced the plaintiff's residual functional capacity, a lengthy and labyrinthine finding commensurate with the 1400-page record. The ALJ determined that plaintiff could perform "light work . . except that she is further limited to work requiring no climbing of ladders, ropes, or scaffolds, no more than occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, or crawling, no more than occasional exposure to and/or work around fumes and other pulmonary irritants and hazards such as moving machinery or unprotected heights." (R. 22). The ALJ continued, finding plaintiff could "perform work which is comprised of simple routine tasks requiring no more than short simple instructions and simple work-related decision making with few work place changes, conveyor belt work, or fast-paced work but can meet end of the day production goals with occasional contact with the general public that is of a brief, superficial, and incidental nature and occasional interaction with supervisors and co-workers, and can work in

3

proximity to others but with no shared or tandem tasks." (R. 22).

The ALJ also said that she found plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for reasons explained in this decision." (R. 24). She discussed plaintiff's allegations, noting the number of normal examination results – in terms of strength, gait, range of motion, etc. – that tended to undermine plaintiff's dire allegations. (R. 23-27). The ALJ also noted some inconsistent statements and lack of compliance with treatment. (R. 16, 23-27). The ALJ accorded weight to the opinion evidence from the state agency reviewers and the medical expert who testified at the administrative hearing as being generally consistent with the overall record. (R. 28).

Next, the ALJ – relying on the testimony of the vocational expert – found that plaintiff was not capable of performing her past relevant work as a telemarketer because it was semi-skilled, thereby exceeding the limits of plaintiff's residual functional capacity. (R. 28). Then the ALJ relied on the vocational expert's testimony to find that, given her residual functional capacity, plaintiff Smith could perform the following jobs that exist in significant numbers in the national economy: housekeeping cleaner (395,000 jobs), hand bander (335,000 jobs), and scaling machine operator (39,600 jobs). (R. 29). Accordingly, the ALJ concluded that Ms. Smith was not disabled and was not disabled and not entitled to SSI under the Act. (R. 29-30).

## II.

If the ALJ's decision is supported by substantial evidence, the court on judicial review must uphold that decision, even if the court might have decided the case differently in the first instance.

See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, __U.S.__, 139 S. Ct. 1148, 1152 (2019)*;Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Beardsley*, 758 F.3d at 837. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997); *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017).

But, in the Seventh Circuit, the ALJ also has an obligation to build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). Even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that logical bridge. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)("we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."); *see also Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010)("The government seems to think that if it can find enough evidence in the record to establish that the administrative law judge might have reached the same

result had she considered all the evidence and evaluated it as the government's brief does, it is a case of harmless error. But the fact that the administrative law judge, had she considered the entire record, might have reached the same result does not prove that her failure to consider the evidence was harmless. Had she considered it carefully, she might well have reached a different conclusion."). But, at the same time, the Seventh Circuit has also called this requirement "lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).

### III.

### A.

To say the least, plaintiff has numerous nits to pick with the ALJ's decision; so many that her brief has two sections entitled, "IV. Argument . . . ." [Dkt. # 14, at 4, 8]. A fair portion of these two argument sections consists of nothing more than contentions unsupported by any citation to the evidence – such as, "there is sufficient evidence to support that she drops things and would be unable to perform the jobs listed in her decision" [Dkt. #14, at 6] or "in 2009 a NCBHS report found she had an inability to concentrate and poor recent memory" [Dkt. # 14, at 6] or "all of her adult relatives have mental illness so there is a genetic component" [Dkt. # 14, at 10], or "the ALJ did not know this [GAF score] simple test" [Dkt. #14, at 11]. The list goes on. "[U]nfortunately... saying so doesn't make it so...." *United States v. 5443 Suffield Terrace, Skokie, Ill.,* 607 F.3d 504, 510 (7th Cir.2010). *See also, Madlock v. WEC Energy Group, Inc.*, 885 F.3d 465, 471 (7th Cir. 2018). Evidence mot partisan insistence is what counts. Gaston v. Gosh, F3d (7th Cir 2019); *Long v. Pfister*, 874 F.3d 544, 555 (7th Cir. 2017); *Dong Seok Yi v. United States*, 2015 WL 2127540, at *10 (N.D. Ga. 2015)("Movant's current claim of innocence is not supported by any evidence other than his current assertion.").

Oddly, plaintiff argues that the "most egregious error" the ALJ made was commenting on a previous ALJ's finding as to level of education: according to the plaintiff, this means the ALJ was relying on facts outside the record and is reason enough for remand. [Dkt. #14, at 4-5]. But, the reference is from a previous hearing – in 2013 – on a previous application that plaintiff never appealed once it was denied. It has absolutely nothing to do with this case. *See Thomas v. Berryhill*, 676 F. App'x 588, 590 (7th Cir. 2017)("Res judicata bars relitigation of already-decided administrative claims."); *see also Phillips v. Astrue*, 422 F. App'x 528, 529 (7th Cir. 2011)("To the extent [plaintiff] believes that the ALJ needed to reconsider her previous applications, she is incorrect; the doctrine of res judicata applies to them.); *Keith v. Barnhart*, 473 F.3d 782, 784 (7th Cir. 2007)("The doctrine of res judicata is explicitly incorporated into administrative proceedings within the Social Security Administration by 20 C.F.R. § 404.957(c)(1)."). If this is the most egregious error plaintiff can identify, her claim is in trouble.

For the court, the "most egregious error" in this case isn't found in the ALJ's decision, but found throughout the plaintiff's brief. Relying on testimony from a previous hearing that has nothing to do with the case up for review is one thing. Failing to cite to evidence is another thing. Judges are not required to sift through the record without direction from counsel – especially a 1000-page record – and find evidentiary support for contentions tossed out like salt strewn on an icy sidewalk in another. *See, e.g., Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 731 (7th Cir. 2014)(lawyers cannot expect judges to play archaeologist with the record); *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Illinois*, 908 F.3d 290, 297 (7th Cir. 2018)*(*"As has become 'axiomatic' in our Circuit, '[j]udges are not like pigs, hunting for truffles buried in' the record.'"); *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 537 (7th Cir. 1992)(". . . compelling the court to take up a

burdensome and fruitless scavenger hunt . . . is a drain on its time and resources.").

But, perhaps worst of all, is the fact that, through two entire argument sections and an additional coda [Dkt. # 14, at 4-15], the plaintiff *cites just two cases*, one for the unexceptional proposition that the ALJ cannot play doctor [Dkt. #14, at 5], the other for the equally unsupported proposition that an ALJ cannot rely on inferences that are not logically based on daily activities. [Dkt. #14, at 11]. But "general propositions do not decide concrete cases." *Lochner v. New York*, 198 U.S. 45, 76 (1905)(Holmes, J., dissenting). *See also Daubert v. Merrell Dow*, 509 U.S. 579, 598 (1993)(Rehnquist, C.J., concurring in part and dissenting in part). Not a single other contention or argument[2] is supported by pertinent authority. The Seventh Circuit has warned attorneys, time and again, that perfunctory arguments, unsupported by pertinent authority, are deemed waived. *United States v. Cisneros*, 846 F.3d 972, 978 (7th Cir. 2017)("We have repeatedly and consistently held that 'perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.'" ); *Taylor-Novotny v. Health All. Med. Plans, Inc.*, 772 F.3d 478, 497 n.78 (7th Cir. 2014); *United States v. Alden*, 527 F.3d 653, 664 (7th Cir. 2008); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991). With all deference, perfunctory, unsupported arguments are virtually the only kind the plaintiff has made here.

## B.

The first of only two arguments plaintiff makes that are supported by case law is that the ALJ played doctor by "disregard[ing] valid medical evidence of peripheral neuropathy." She claims that

---

[2] And there are many. In the first argument section, there are eight bullet-point contentions. [Dkt. # 14, at 4-8]. In the second argument section, the arguments are numbered from 1 to 9, and then from 13 to 14. [Dkt. #14, at 8-14].

evidence shows "[s]he has diminished sensation in her hands, ankles, and feet as of April 24, 2015." [Dkt. # 14, at 5]. First of all, it does not. The monofilament testing done by the nurse practitioner that day revealed diminished sensation in both feet; there was no mention of any such deficit in plaintiff's hands. (R. 1393).[3] Second of all, the ALJ did not ignore it and form her own medical opinion. She said it came from a nurse practitioner, who is not an acceptable medical source. (R. 17).

This is true. Nurse practitioners are "medical sources" who are not "acceptable medical sources." 20 CFR 404.1513(d) and 416.913(d); SSR 06-03p, 2006 WL 2329939, *2. The regulations require evidence from "acceptable medical sources" to establish the existence of a medically determinable impairment, they are the only sources that can provide medical opinions, and only they can be considered treating sources. 2006 WL 2329939, *2. As such, there is a distinction in the weight to be accorded a report from a nurse practitioner and a report from a doctor. Nurse practitioners can provide evidence to show the severity of an impairment and how it affects an individual's ability to function, 2006 WL 2329939, *2, but as the ALJ noted here, there is no evidence showing diminished sensation in plaintiff's feet affect her ability to walk or stand. (R. 17, 23). All the ALJ did here was apply the appropriate regulations and SSR, and accorded a report from an "other medical source" appropriate weight. She did not "play doctor" and interpret medical evidence, *see McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018); she "played" ALJ and

---

[3] The nurse's report reads: "Sensory exam: hyperesthesia present. Light Touch: Diminished Sensation: Radiculopathy: Peripheral Nerves: Sensation to Light Touch: diminished right dorsum of the foot and diminished left dorsum of the foot. Decreased right foot monofilament wire testing. Decreased left foot monofilament wire testing. Sensation to pinprick: diminished right dorsum of the foot and diminished left dorsum of the foot. Sensory Level: Temperature: Vibration: Vibratory sensation was decreased at both ankles and decreased at the toes of both feet. Proprioception: Proprioception was impaired at the toes in both legs." (R. 1393).

considered and assessed one report from a "medical source" along with the rest of the medical evidence in the 1000-page record. *Kelham v. Berryhill*, 751 Fed.Appx. 919 (7th Cir. 2018)(Assessing medical evidence "was not "playing doctor"—a stock error of which [plaintiff] accuses the ALJ; the ALJ did not supplant the doctor's judgment in concluding that the doctor's observation of a limited range of motion did not require work-related restrictions.").

The second argument arguably supported by case law comes much later in the brief, where the plaintiff argues that:

> The ALJ ignored her restrictions of daily activities even though she relies on her husband and children. (R. 19). The ALJ is making impermissible inferences on her activities. Daily activities may discredit a person but these few household chores are not inconsistent with her pain and limited mobility and her problems with concentration, pace and staying on task. The ALJ cannot rely on inferences that are not logically based on daily activities and social interactions that do not remotely describe a 'very active' lifestyle. *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014).

[Dkt. # 14, at 11]. But, the ALJ specifically mentioned the plaintiff's restrictions including the help she received in accomplishing some tasks. (R. 19). In fact, he found her daily activities, social functioning, and her concentration moderately restricted. (R. 19). She then accounted for these restrictions in her residual functional capacity finding, finding she could not perform "conveyor belt work, or fast-paced work" and limiting her to only occasional and brief, superficial contact with the public, occasional contact with supervisors and co-workers and precluding work requiring tandem tasks. (R. 22).

Moreover, nowhere did the ALJ say plaintiff had a "very active" lifestyle. Indeed, the phrase does not appear in the case plaintiff quotes either. *Murphy* found fault with an ALJ discrediting a plaintiff's complaints regarding symptoms from a stroke because she took a vacation that consisted of "sunning herself on the beach while listening to smooth jazz." *Murphy*, 759 F.3d at 817.

10

Obviously, the activities the ALJ cited here – talking and texting on the phone, taking out the garbage, caring for her uncle, shopping for groceries, celebrating holidays with her children, preparing simple meals, maintaining hygiene, washing dishes, doing laundry, driving, reading books, playing board games, getting children ready for school – are far more involved, in terms of activity and socialization, than lying in the sand alone listening to music.

Importantly, this is not a case where the ALJ equated daily activities with a capacity to hold down a full-time job. ALJs are required to assess daily activities. *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016). Here, the ALJ discussed plaintiff's activities and, rather than say they proved she could work, she accounted for their limited nature by restrictions in her residual functional capacity finding.

## C.

From there, we move on to the host of "arguments" that are either undeveloped, unsupported, contrary to the evidence, two of the foregoing, or all three. First, as already noted, plaintiff argues that "there is sufficient evidence to support that she drops things and would be unable to perform the jobs listed in her decision (R. 29) especially "Hand Bander." [Dkt. # 14, at 6]. This is a single-sentence argument that is not only unsupported by any case law, but is unsupported by any citation to the supposed "sufficient evidence" anywhere in the 1000-page medical record. The argument is deemed waived. *Truelove v. Berryhill*, 753 Fed. Appx. 393 (7th Cir. 2018)(single-sentence argument deemed waived); *United States v. Collins*, 796 F.3d 829, 836 (7th Cir. 2015)(single-sentence argument that is "unsupported, undeveloped" . . . is "an afterthought . . . and is deemed waived."). "A district court need not scour the record to make the case of a party who does nothing." *Herman v. City of Chicago*, 870 F.2d 400, 404 (7th Cir.1989). *See also* 7, *supra*.

11

The plaintiff then complains that the ALJ "erred in considering the effect of her psychological problems in terms of her ability to stay on task and concentrate." [Dkt. #14, at 6]. The only evidence regarding concentration plaintiff mentions is "a [2009] NCBHS report found she had inability to concentrate and poor recent memory." [Dkt. #14, at 6]. Plaintiff's brief provides no citation to the record for that evidence and so, it could be anywhere in the 1000 pages of medical evidence. It would appear, however, that records from NCBHS are dated from 2013 through 2016, (R.426-71, 1170-1386), with no records from 2009. If there is a report from 2009, it was up to the plaintiff to direct the court to it. And, in any event, again, the ALJ determined that the plaintiff had moderate difficulties in concentration, persistence, and pace (R. 20), and accounted for this by precluding "conveyor belt work or fast-paced work . . . ." *Cf. Peterson v. Berryhill*, 2017 WL 2274338, at *3 (N.D. Ill. May 25, 2017)(explaining why limitation to simple work does not account for difficulties with concentration);*Kendzion v. Colvin*, 2014 WL 5448670, at *6 (N.D. Ill. Oct. 27, 2014)(same).

Plaintiff goes on from there to cite snippets of evidence to support the fact that she suffers from bipolar, anxiety-related, and personality disorders [Dkt. # 14, at 6-8; 9-10] *which is exactly what the ALJ concluded*. (R. 16). But, of course, diagnosis is not the same as disability. *Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005); *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998); *see also Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004)("The issue in the case is not the existence of these various conditions of hers but their severity and, concretely, whether, as she testified . . . they have caused her such severe pain that she cannot work full time."). Psychological impairments might be disabling or they might not. *See, e.g., Truelove v. Berryhill*, *supra*; ("intermittent explosive personality disorder, schizoaffective disorder, cannabis abuse, mood

12

disorder, and borderline intellectual functioning" not disabling); *Kelham v. Berryhill*, s*upra*; ("bipolar disorder, anxiety, and borderline intellectual functioning" not disabling). It was up to the plaintiff to prove she is disabled by providing evidence beyond a list of diagnoses. *See Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008)("The claimant bears the burden of producing medical evidence that supports her claims of disability. That means that the claimant bears the risk of uncertainty, . . . ."); *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004)("It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability."); 20 C.F.R. § 404.1512(c) ( "You must provide medical evidence showing that you have an impairment and how severe it is during the time you say that you were disabled."); She hasn't done so and, worse, the evidence she claims is in the record isn't even there – or, at least, isn't where she claims it is. Judges are not required to play "archaeologist with the record." *DeSilva v. DiLeonardi,* 181 F.3d 865, 867 (7th Cir.1999). *See also Sommerfield v. City of Chicago*, 863 F.3d 645 (7th Cir. 2017).

For one example, plaintiff, submits that "Dr. Sheth opines on 1/21/15, she is unable to work due to anxiety and social phobia. (R. 1201)" [Dkt. # 14, at 9]. But the record plaintiff cites is dated October 22, 2014, and makes no mention of work. (R. 1201). For another example, plaintiff claims she was diagnosed with "really bad mood swings," [Dkt. #14, at 9], but that was her own self-report. (R. 1251). For a third, she claims "all of her adult relatives have mental illness so there is a genetic component." [Dkt. #14, at 10]. She cites no evidence whatsoever for this point. The examples go on. Another "argument" plaintiff makes is this:

> Working for Uncle for extra income (R. 16). ALJ implies she was not truthful as she answered her last work was in 2010 for a cookie factory. (R. 42). She does not state she helped elderly uncle before he went into assisted living (R. 1337). This was not

on a regular basis and was before January 27, 2015. The ALJ did not question her at the hearing.

[Dkt # 14, at 8].

It's unclear what the plaintiff has an issue with here. At the administrative hearing, the ALJ asked the plaintiff, "when is the last time you worked *in any form or fashion*?" (R. 42 (emphasis supplied)). The plaintiff answered that "back in 2010 was the last time." (R. 42). Yet, elsewhere in the record she indicated that had been working for her uncle to make extra money up until January of 2015. (R. 1337). It's entirely proper for an ALJ to take inconsistent statement into consideration when assessing a claimant's allegations and testimony. *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017); *see also Keys v. Berryhill*, 679 F. App'x 477, 482 (7th Cir. 2017); 20 C.F.R. § 416.929(c)(4) (ALJ will assess inconsistencies in evidence, including the claimant's statements).[4]

The plaintiff also states that the "ALJ opined that Interpretation of WISC intelligence testing performance is so reflexive of her emotional state that her true finding that her true ability level is of average intellect." [Dkt #14, at 8]. It's not entirely clear what the plaintiff means by this – she does not cite to the ALJ's decision – but she later suggests that the ALJ improperly concluded that she was "disingenuous in her presentation of her mental capacity" and that her "intellect is higher than her testing." [Dkt #14, at 10]. This is a mischaracterization of the record. The ALJ did not determine that plaintiff was disingenuous in regard to her intellectual functioning; the consultative psychologist who examined plaintiff did. (R. 20, 565). Nor did the ALJ opine that intelligence

---

[4] The plaintiff's claim that "[t]he ALJ did not question her at the hearing" seems to suggest that if the ALJ had delved deeper into her unqualified answer to her unqualified question, some explanation for her inconsistent statements was in the offing. Certainly, however, no explanation is provided in the plaintiff's brief. The silence is deafening. *See Muhammad v. Oliver*, 547 F.3d 874, 877 (7th Cir. 2008)("[I]f there [were] a[ valid reason], one would expect an allegation to that effect. There is none. The . . . silence is deafening.").

testing scores – from 25 years ago – were reflective of her emotional state; the child psychologist conducting the test in 1993 did. (R. 17, 391). In the end, she concluded that, at 9 years old, plaintiff was in the low *normal* range of functioning. (R. 1165). Similarly, the intellectual study plaintiff cites from when she was 10 years old indicates that she was of low *normal* intelligence. (R. 1164-65). And, as the ALJ pointed out, she was able to perform semi-skilled work as an adult in the past. (R. 18).

Next, plaintiff claims the ALJ found "there is probably no peripheral neuropathy of fibromyalgia that would create a physical limitation." (R. 16). [Dkt. #14, at 10]. It's another curious argument because, in fact, the ALJ found that plaintiff's fibromyalgia *was* a severe impairment, meaning it did cause more than minimal impact on her ability to perform basic work activities. (R. 16). *See Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016)("An impairment is "not severe" only if it is "a slight abnormality" that has "no more than a minimal effect on the ability to do basic work activities."). Plaintiff seems to claim that she is markedly limited by fibromyalgia, but cites no evidence to prove this. This is yet another undeveloped, unsupported, perfunctory argument. Partisan hopes are not a substitute for evidence.

Plaintiff goes on to claim the "ALJ gave no significance to fibromyalgia because her gait was not impaired." [Dkt. #14, at 11]. Again, that's not true because the ALJ found it was a severe impairment and limited her to a restricted range of light work. Indeed, the very examination results plaintiff cites – the consultative examination of April 8, 2014 (R. 556-62) – belie many of her claims. Recall, for instance, that plaintiff's unsupported claim in her brief that "there is sufficient evidence to support that she drops things and would be unable to perform the jobs listed in her decision" [Dkt. #14, at 6]. Significantly, the consulting physician noted there were no abnormalities

15

in her upper extremities. Grip strength was strong and the was no limitation of motion in any of her joints. (R. 559). She had no difficulty using either hand to manipulate items from a door knob to a coin to tying shoelaces. (R. 560). Results were normal, as well, upon examination of her lower extremities. (R. 559). *See Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018)(normal examination results can undermine allegations); *Britt v. Berryhill*, 889 F.3d 422, 426 (7th Cir. 2018)("[D]iscrepancies between the objective evidence and self-reports may suggest symptom exaggeration.").

Plaintiff's next argument is no more than this: "Mood swings, depressed mood, auditory, diagnosis of Bipolar and PTSD meds did not change. (R. 25)." [Dkt. # 14, at 11]. To the extent this is an argument, obviously, it is deemed waived. *Cisneros*, 846 F.3d at 978; *Taylor-Novotny*, 772 F.3d at 497 n.78; *Alden*, 527 F.3d at 664; *Berkowitz*, 927 F.2d at 1384. To the extent it is an attempt to reference evidence of disability – even though it is a citation to the ALJ's opinion – again, diagnoses do not equal disability. *Schmidt*, 395 F.3d at 746; *Estok*, 152 F.3d at 640.

Then, with a bit more clarity – though not much – plaintiff complains that "GAF is given little weight. (R. 26). GAF is an attempt to collate cognitive function and psychological activities. The ALJ did not know or do this simple test." [Dkt. # 14, at 11]. Plaintiff's brief cannot possibly mean what it says: that the ALJ should have conducted a test to assign plaintiff a GAF score. The ALJ is not a psychologist after all and, as the plaintiff reminds us, ALJs must not play doctor. And, clearly, the ALJ knew what the GAF scores were and discussed them in her opinion. (R. 26). The ALJ accorded scores she felt were supported by treatment notes, and dismissed others she thought were not. As such, she properly decided the weight to accord these assessments "by considering, . . . the opinion's consistency with other evidence; the explanatory support for the opinion; . . . ."

*Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018). Notably, as of the date of the GAF score the ALJ dismissed – July 2014 – the American Psychiatric Association had eliminated the GAF scale from its Diagnostic and Statistical Manual of Mental Disorders as being unreliable. *Cole v. Colvin*, 831 F.3d 411, 413 (7th Cir. 2016); *Voigt v. Colvin*, 781 F.3d 871, 874 (7th Cir. 2015).

From there, the plaintiff moves on to the testimony of Larry Kravitz, the clinical psychologist who testified at plaintiff's hearing as a medical expert. As the plaintiff notes, after reviewing the medical evidence, Dr. Kravitz found that plaintiff shouldn't do work that involved more than "short and simple tasks", "brief and superficial workplace contact . . . with minimal interaction from others and no – no frequent or overly close supervision required." (R. 61). He ruled out a work "environment with high or unpredictable levels of work stress, such as strict production quotas, frequent changes in the work routine, fast-paced work . . . ." (R. 61-62). He explained that plaintiff "would have trouble with – involved in person-to-person relationships or have trouble with more than simple, routine tasks." (R. 64). Plaintiff argues that "[t]he ALJ failed to reasonably review this decision [sic] and finds [plaintiff] could perform jobs that she reasonably could not it you interpreted Dr. Kravitz's [sic] as reasonable." [Dkt. #14, at 13].

Again, it must be said that it is difficult to know what to make of plaintiff's argument. The ALJ, in fact, adopted the limitations the plaintiff is highlighting and incorporated them in her residual functional capacity finding. The ALJ limited plaintiff to "simple, routine tasks", precluded more than "few work place changes, conveyor belt work, or fast-paced work", and precluded more than "occasional contact with the general public that is of a brief, superficial, and incidental nature and occasional interaction with supervisors and co-workers . . . ." (R. 22, 71-72). She could "work in proximity to others but with no shared or tandem tasks." (R. 22, 71-72). Plaintiff doesn't say

17

where the ALJ went wrong and, from all appearances, she tracked Dr. Kravitz's opinion rather closely. All that is required of an ALJ is that she include in her residual functional capacity finding and hypothetical to the vocation expert all the limitations supported by the medical evidence record. *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018); *Simila v. Astrue*, 573 F.3d 503, 520 (7th Cir. 2009); *Seamon v. Astrue*, 364 F. App'x 243, 248 (7th Cir. 2010). That is exactly what the ALJ did here.[5]

> Finally, plaintiff returns to her unsupported argument regarding her hands. She says:
>
> The work of Hand Bander could not be done if she has problems with her hands. She testified she had worked "packing cookies that went down the line. And I wasn't going fast enough. So that's why they let me go.

[Dkt. # 14, at 14]. Of course, as just discussed, the ALJ's residual functional capacity finding and hypothetical eliminated such jobs from consideration. But, more importantly, through 15 pages of briefing, plaintiff fails to cite any medical evidence to show that she cannot use her hands to work. Again, it is not up to the court to find such evidence for her; it is up to her to do so. *Williams v. Dieball*, 724 F.3d 957, 963 (7th Cir.2013)("It is not the district court's job to flesh out every single argument not clearly made."). To make matters worse, the testimony about hand problems that she relies on comes from the hearing on her previous application in 2013. [Dkt. #14, at 4 (citing R. 93)]. As already indicated, plaintiff's prior application is not before the court for review. *Thomas*, 676 F. App'x at 590; *Phillips*, 422 F. App'x at 529; *Keith*, 473 F.3d at 784; 20 C.F.R. § 404.957(c)(1).

---

[5] While the plaintiff's attorney posited additional limitations – and inability to sit or stand for more than one hour, without a 15 minute rest period – that eliminated all but the hand bander job (R. 73-74), these limitations were not supported by the medical evidence, and plaintiff fails to cite to any in her brief. [Dkt. #14, at 14]. Moreover, even if such limitations were supportable, the vocational expert testified that there were 335,00 hand bander jobs in the national economy (R. 74); that's far in excess of what is considered a significant number. ,

18

Conversely, at the hearing on plaintiff's current application, the one we are concerned with here, the ALJ asked her why she believed she was disabled and could not work any more. The plaintiff explained:

> I can't – I mean, I can sit a little bit, but it bothers me to sit and to, like, stand long periods. It bothers me. My feet shake. And then I have neuropathy in my feet, you know, so it feels like pins and needles when your walking. And I don't do good around crowds of people. I'd rather stay to myself.

(R. 49). She made no mention of problems with her hands being a reason why she could no longer work. Remember, she had counsel representing her at this hearing. And, even now, in her brief, the only medical evidence she cites that assesses her ability to use her hands, as already noted, indicates she has no trouble with manipulation, no limitation of motion in her hands, and full grip strength. (R. 559-60).

Accordingly, the ALJ's decision finding plaintiff not disabled and not entitled to SSI must be affirmed. It is an understatement to say that review of the decision in this instance was definitely hampered by the plaintiff's scattershot approach to briefing. This type of approach often destroys the clarity of a party's position, *Fody v. Colvin*, 641 F. App'x 568, 573 (7th Cir. 2016), and it certainly has here. Matters were made worse by the failure to develop many arguments beyond the perfunctory stage, the failure cite medical evidence to support contentions, and the failure to cite pertinent authority in support of most arguments. It's worth pointing out in this regard that plaintiff was represented by counsel at both the administrative level and here in federal court, meaning that one has to presume what she submitted constituted her bast case for receiving benefits. *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017); *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) It is, after all, an advocate's job to make it easy for the court to rule in their client's favor. *Dal Pozzo*

*v. Basic Mach. Co.*, 463 F.3d 609, 613 (7th Cir. 2006). In the end, "it may be that we have not grasped all of [plaintiff's] arguments, but we have done the best we could with a scattershot presentation." *Contilli v. Local 705 Int'l Bhd. of Teamsters Pension Fund*, 559 F.3d 720, 724 (7th Cir. 2009).

## CONCLUSION

For the foregoing reasons, the ALJ's decision is affirmed. The Commissioner's motion for summary judgment [Dkt. #21] is granted and the plaintiff's motion [Dkt.#13] for summary judgment is denied.

**ENTERED:** _/s/ Jeffrey Cole_
**UNITED STATES MAGISTRATE JUDGE**

**DATE:** 6/5/19